JODI LINKER
Federal Public Defender
Northern District of California
NED SMOCK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Ned_Smock@fd.org

Counsel for ANGEL CARRANZA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANGEL CARRANZA,<br><br>Defendant. | Case No.: CR 25-CR-00353 MMC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date:  November 5, 2025<br>Time:  2:15 p.m.<br>Court: Hon. Maxine M. Chesney |

**INTRODUCTION**

Angel Carranza is scheduled to appear before the Court on November 5, 2025, for a jointly requested combined change of plea and sentencing hearing. Mr. Carranza intends to plead guilty to an information charging one count of possession for sale of fentanyl. He respectfully requests that the Court impose the parties' agreed-upon sentence of time served and one business day to be followed by three years of supervised release and a stay-away order from the Tenderloin. In light of the proposed disposition, he requests that the Court decline to order preparation of a Presentence Report, pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii).

Mr. Carranza is a 22-year-old young man from Honduras with no prior arrests who came to this country as a teenager to find a better life and to send money back home to his family. He settled in Louisiana approximately four years ago. He met a woman with whom he is in a serious relationship, they had a son, and he worked full time in construction. He was earning $18 per hour and had a calm, family-focused life. When he heard from a friend of a job opportunity working on a hospital in San Francisco, he decided to travel here for a short period of time to earn additional money to support his family. When he arrived here and reported to the work-site, though, he was told that he was ineligible to be hired because he did not have proper documentation. Desperate to get back to his partner and child in Louisiana, Mr. Carranza briefly joined acquaintances in the Tenderloin and took part in street-level drug sales in an effort to save enough money to pay for transportation back. He had only been here in the Bay Area for about two weeks at the time of his arrest. On October 14, 2025, Mr. Carranza was arrested after a man who had engaged in a hand-to-hand sale to an undercover officer handed his belongings to Mr. Carranza. Mr. Carranza possessed a relatively small amount of fentanyl. He was not a sophisticated drug dealer by any means. He had neither a scale nor a weapon on his person at the time of his arrest. He had never before been arrested. As part of this fast track disposition, Mr. Carranza waived the right to proceed by indictment, waived the right to seek release while the case was pending, and he immediately took responsibility for his conduct by agreeing to plead guilty at the earliest possible opportunity. Mr. Carranza will face substantial immigration consequences as a result of this conviction. He will not only be subject to near-certain deportation back to Honduras, but he will be ineligible for numerous avenues of relief in immigration

proceedings and will become permanently inadmissible to the United States in the future. This is especially painful for Mr. Carranza given that his partner and child are in Louisiana.

## DISCUSSION

### I. Advisory Guidelines Calculation

Mr. Carranza agrees with the government that the adjusted offense level is 11, as set forth in the parties' plea agreement. The advisory guidelines are calculated this way:

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(12):<br>(At least 8 grams but less than 16 gram of fentanyl) | 16 |
| b. | Acceptance of Responsibility: | -3 |
| c. | Zero-Point Offender Adjustment, U.S.S.G. § 4C1.1 | -2 |
| | Adjusted Offense Level: | 11 |

The parties also agree that Mr. Carranza's criminal history category is I. United States Pretrial Services determined that Mr. Carranza has no arrests or convictions. His advisory guideline sentencing range is therefore 8-14 months.

### II. A Sentence of Time Served Would Be Sufficient but Not Greater Than Necessary To Achieve the Sentencing Goals Of § 3553(a)

In sentencing Mr. Carranza, this Court must consider all of the directives set forth in 18 U.S.C. § 3553(a); the Guidelines are only one factor among many to be considered by the Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need to: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; (5) protect the public from further crimes of the defendant; and (6) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). Section 3553(a) also directs the Court to consider a number of additional factors, including: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, § 3553(a)(1); the kinds

of sentences available, § 3553(a)(3); the sentencing guideline range, § 3553(a)(4); pertinent Sentencing Commission policy statements, § 3553(a)(5); the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and the need to provide restitution to any victims of the offense, § 3553(a)(7).

Under *Booker*, the sentencing court must impose the lowest reasonable sentence that fulfills the goals of Congress, unencumbered by offense levels, criminal history, or the availability of authorized downward departures. While the Court may apply a presumption of reasonableness to sentences within the applicable Guidelines range, the district court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 351 (2007). Nor is it required to use a formulaic approach yielding a mathematical justification of non-Guidelines sentences. *See Gall v. United States*, 558 U.S. 38, 49 (2007). Rather, it must exercise "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Rita*, 551 U.S. at 358.

### A. The nature and circumstances of the offense

Mr. Carranza's conduct in the instant matter was possessing for sale approximately 12 grams of fentanyl, including the weight of packaging. Mr. Carranza did not have a weapon nor did he engage in violence. He did not possess a scale or a larger stash of drugs that might have suggested he was involved in larger-scale trafficking. In fact, he has no history of engaging in this conduct because he was working in Louisiana prior to his recent journey to the Bay Area to work.

Mr. Carranza was arrested as part of the government's initiative targeting cases arising in the Tenderloin for federal prosecutions. He has no convictions on his record. As part of this disposition he will stand convicted of a felony offense. The parties' proposed felony disposition more than adequately addresses the nature and circumstances of the offense.

### B. Mr. Carranza's history and characteristics

Angel Carranza was raised in a town of 20,000 people called Talanga in Honduras. His father was completely absent from his life – Mr. Carranza has never even seen a photograph of him. His mother had ten other children and she supported them working as a cook and cleaner for a family and business in town. Because they had so little money, Mr. Carranza stopped school in sixth grade and

started working for the same boss as his mother. The man owned a beer and soda business, so Angel went out on the truck delivering soda and beer to local businesses. He supplemented that income by working in construction as a mason's helper.

At 18, Mr. Carranza decided to come to the United States in search of work that would pay enough to send money back home to his mother. His girlfriend at the time had just given birth to a son, whom they named Angel Emmanuel, so Mr. Carranza was also anxious to provide enough money so that his son could have a more comfortable childhood than he did. Mr. Carranza had a family member in Louisiana who had a job in construction and he helped Mr. Carranza get hired. Mr. Carranza worked steadily in Louisiana. He also met a young woman with whom he settled down. They had a son, Josue, and Mr. Carranza has also become a father-figure to his partner's older son from an earlier relationship. A couple of months ago, Mr. Carranza heard from an acquaintance from Honduras about work that was available in San Francisco doing construction on a hospital. The hourly wage his friend was earning was high enough that it was worth making the trip in order to save money to support his family. After discussing the pros and cons of the trip with his partner, Mr. Carranza arranged for a ride and came to San Francisco. Unfortunately, when he arrived at the worksite he was told that he needed proof of legal status in this country in order to be able to work. Mr. Carranza decided he would go back to his partner and child in Louisiana, but he had no money saved to pay for the trip. Desperate, he went with Hondurans he had met to the Tenderloin and briefly engaged in small-scale sales of drugs in order to try to earn enough money to go back to his family. He deeply regrets this extremely poor decision.

Mr. Carranza has discussed his future plans with his partner. He recognizes that he must return to Honduras and that he will be a better help to his family living there than he would be risking re-arrest in this country. His mother and his namesake son are there, and he is looking forward to reuniting with them. He and his partner are already planning for her and their son to visit him in Honduras, where she is from as well.

.

**C.    A sentence of time served provides specific deterrence and protects the public from future crimes**

The negotiated disposition in this case is by no means lenient. Mr. Carranza has never before

been arrested and he has never spent time in jail. He has already spent more time in custody than individuals with his background who are charged with the same offense in state court. Further, as part of this plea Mr. Carranza is agreeing to be deported following service of his sentence. Almost every avenue for relief that Mr. Carranza otherwise would be able to pursue as a potential defense in immigration proceedings will no longer be available to him. Most severely, he will be rendered permanently inadmissible to the U.S., meaning that he will be barred from re-entry for the rest of his life. Finally, before deportation, he will spend an uncertain period of time in immigration detention which would serve as an additional custodial consequence and deterrence. The recommended disposition of this matter both protects the community from crime and provides specific and general deterrence.

## CONCLUSION

For the aforementioned reasons, Mr. Carranza respectfully requests the Court sentence him to the parties' joint recommendation of time served and one business day and three years of supervised release with the proposed special conditions.

Dated:   October 29, 2025         Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

          /S
NED SMOCK
Assistant Federal Public Defender

DEFENDANT'S SENTENCING MEMORANDUM